Easton Alfonso LAWSON

v.

Victor LIBURDI, Jean Singleton, June Carlton, Patrick Grieves, Patrick Toolin

No. CIV.A. 98–533ML.

United States District Court, D. Rhode Island.

Aug. 23, 2000.

Easton Alfonso Lawson, pro se.

Dennis Grieco, Providence, RI, for Defendants.

**Report and Recommendation**

HAGOPIAN, United States Magistrate Judge.

The *pro se* plaintiff, Easton Alfonso Lawson, has filed this instant Complaint against employees of Cornell Corrections,

the company which operates the Donald Wyatt Detention Facility, in Central Falls, Rhode Island. The Wyatt Facility housed the plaintiff from January 14, 1998, until December 17, 1998, while he was in the custody of the United States Marshals Service. In his Complaint, plaintiff alleges that the defendants violated the First Amendment's free exercise clause, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's equal protection clause, together with a violation of the Wyatt Center's Food Policy Regulation 451.

Presently before the court is the motion of defendants Jean Singleton, June Carlton, and Patrick Toolin, to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiff has opposed the motion.

This matter has been referred to me for preliminary review and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the defendants' motion to dismiss be **GRANTED.**

## I. Background

The plaintiff in this instant action has filed a Complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging a violation of his First, Eighth, and Fourteenth Amendment rights, together with an alleged cause of action based on a violation of a Food Service Policy of the Wyatt Detention Center. Defendants in this action are/were employees of a private corporation, Cornell Corrections, and worked at the Donald Wyatt Detention Center [1] in Central Falls, Rhode Island, during the time that the plaintiff was detained there.

Defendants initially moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the facts alleged in the Complaint fail to state a claim of a deprivation of federally protected rights. The Court, *sua sponte,* requested that the parties brief and argue the issue of whether the named defendants, employees of a private corporation, act "under the color of law" for purposes of a Bivens or a § 1983 action.[2] For the reasons that follow, I find that the named defendants do not act "under the color of law" for either Bivens or § 1983, and recommend that the defendants' motion to dismiss be granted.

## A. The Donald Wyatt Detention Center

The Donald Wyatt Detention Center is a unique creature. On July 11, 1991, the General Assembly of the state of Rhode Island enacted the Municipal Detention Facility Corporations Act.[3] R.I. Gen. Laws 45–54–1 *et seq.* The Act had two purposes. First, to promote economic development in the state by building a prison. R.I. Gen. Laws 45–54–2(b). Second, it would provide the United States Marshals Service space to house federal pre trial detainees. *See id.* The Act permitted a municipality to create a corporation that would own and operate a detention facility.

The city council of Central Falls passed a resolution adopting a plan, enabling Central Falls to become the only municipality to construct a prison pursuant to the Act. *See City of Central Falls v. Central Falls Detention Facility Corp.,* C.A. No. 94–3939, 1997 WL 839936, at 1 (R.I.Super. June 23, 1997). In doing so, the city created the Central Falls Detention Facility

---

**1.** The Donald Wyatt Detention Center will hereafter be referred to as "Wyatt".

**2.** Although the plaintiff has filed his Complaint under *Bivens,* considering the extra degree of solicitude afforded *pro se* litigants, this Court will also examine whether the defen-

dants acted 'under the color of law' for Section 1983 purposes.

**3.** The Municipal Detention Facility Corporations Act will hereafter be referred to as the "Act".

(CFDFC), a public corporation which would own Wyatt.[4]

The CFDFC is a public corporation with five members on its board of directors. *See* R.I. Gen. Laws 45–54–5. The members of the Board of Directors are appointed by the Mayor of the city of Central Falls and serve on a volunteer basis. *Id.* The corporation is not part of the city of Central Falls, but rather is "a separate legal entity with its own powers." *CFDFC*, 1997 WL 839936, at 6. Once the city of Central Falls voted to allow the creation of the CFDFC pursuant to the Act, it relinquished any authority over the decisions of the CFDFC, except in certain instances.[5] Financing for the detention facility came from the state Port Authority, who issued bonds to finance the project. *See CFDFC* at 1.

The CFDFC contracted with Cornell Corrections, a private corporation, to employ the staff and to run the day to day operations of the facility. *See Huguenin v. Ponte*, 29 F.Supp.2d 57 (D.R.I.1998). Cornell Corrections has the exclusive use, possession, and control of the facility, and has exclusive authority to operate the facility. *Lacedra v. Donald W. Wyatt Detention Center*, C.A. No. 99–458 L, Report and Recommendation of July 3, 2000. The CFDFC also contracted with the U.S. Marshals Service to house federal pretrial detainees at the prison. *See CFDFC* at 6. In late 1993, the CFDFC opened the prison and named it Donald Wyatt Detention Center. *See Huguenin* at 59.

## B. Plaintiff's Complaint

Plaintiff Easton Alfonso Lawson, at times relevant to the Complaint, was a federal pretrial detainee housed at Wyatt.

Defendants Victor Liburdi, the former Director of the Facility, Jean Singleton, the Program Administrator, June Carlton, the Counselor, Patrick Greives, the Food Administrator, and Patrick Toolin, the Grievance Coordinator, were employees of Cornell Corrections working at Wyatt during the relevant times in the Complaint.

Plaintiff began his confinement at Wyatt on January 14, 1998. Upon entering the facility, the plaintiff alleges that he informed a staff nurse that he is a member of the Rastafarian faith, which requires him to adhere to a religious diet called "Ital". Ital prohibits members of the Rastafarian faith from touching or consuming meats or meat products, including chicken, turkey, and eggs. Plaintiff avers that the staff nurse informed him that the facility would not accommodate his religious diet, and that he would have to avoid the foods that he could not eat.

On January 16, 1998, plaintiff asserts that he made a written request to the Counselor, defendant June Carlton, that the prison accommodate his religious diet. On January 20, the plaintiff alleges that he met with Carlton, and she allegedly informed the plaintiff that she would look into the matter.

When Carlton did not respond to plaintiff's request to be placed on his religious diet, the plaintiff asserts that he met with the Program Administrator, defendant Jean Singleton, on February 9, 1998. Again, plaintiff asserts he explained his religious beliefs and his religious diet requirement. Singleton told him that she would be appointing Carlton to find a remedy for the situation.

---

4. The CFDFC, not the city of Central Falls, owns the Wyatt facility. *See* R.I. Gen. Laws 45–54–2(c).

5. *See* R.I. Gen. Laws 45–54–6(n) (1991), 45–54–8(d) (1991). These statutes set forth two instances in which the municipality may exercise authority over the CFDFC. First, if the CFDFC enters into any non-federal contracts, they must conform to the municipality's pro-

curement requirements, if any. Second, the municipality may transfer property to the CFDFC without formality if the corporation needs the property. The municipality's authority is limited over the CFDFC to these two narrow circumstances. *See CFDFC*, 1997 WL 839936, at 6 (*citing Vukic v. Brunelle*, 609 A.2d 938, 941 (R.I.1992)).

On February 25, the plaintiff avers he "confronted" Carlton. Again, plaintiff asserts that he explained that his religion prohibited him from consuming or touching meats. Plaintiff alleges he requested that the prison place him on a vegetarian diet and provide a substitute for the meat to supplement his diet. Plaintiff then alleges that Carlton called the Dietician of the facility. Following the phone call, plaintiff asserts that Carlton told the plaintiff that the prison does not serve special diets, and that he would have to remove the meat from his meals.

On March 23, 1998, plaintiff asserts that he wrote a letter to the director of the facility, Victor Liburdi. The letter allegedly explained plaintiff's religious beliefs and how the plaintiff was being "starved" since he refused to eat the meals served. Plaintiff again allegedly requested that the prison accommodate his religious diet. Plaintiff avers that the Director never responded to his request.

Following an episode of stomach discomfort, vomiting, diarrhea and headaches, plaintiff alleges he filed a grievance on September 15, 1998, which purportedly stated that the plaintiff was becoming ill from eating only bread. Again, plaintiff requested that he be placed on a diet consistent with his religious beliefs. Plaintiff alleges that he was then placed on a liquid diet. On September 22, plaintiff alleges that the Grievance Coordinator, defendant Patrick Toolin, denied plaintiff's grievance. Plaintiff then appealed his grievance to the Director of the Facility, defendant Liburdi.

On September 24, 1998, plaintiff continued his struggle to receive a diet conforming to his religious beliefs by allegedly writing to the Director, the Program Administrator, the Food Administrator, the Counselor, and the Dietician. In the letter, plaintiff alleges that he explained again that his religion prohibits him from consuming or touching meat or eggs, and that his recent illness was attributable to the prison's failure to accommodate his religious diet.

Additionally, plaintiff alleges that other inmates at Wyatt were served meals which complied with their religious beliefs. Specifically, plaintiff alleges that certain prisoners were given kosher, non-meat meals. Plaintiff asserts that he was finally served one of these kosher, non-meat meals nine months after requesting it.

After ingesting the kosher meal, however, plaintiff avers he became ill. After becoming ill, the plaintiff was examined by a prison physician, Dr. Chang (a non-party to this litigation). Dr. Chang then allegedly proscribed the plaintiff medication. Plaintiff asserts that this medication was interrupted when plaintiff failed to receive it on a day in which he attended court for a hearing. Plaintiff alleges that on this day he experienced a recurrence of vomiting and diarrhea as a result of his medication being interrupted.

Plaintiff, on October 9, 1998, allegedly wrote to Singleton, explaining that he was having health problems. On October 10, plaintiff alleges he informed a staff nurse about his purported illness, and that he wished to see a doctor. Plaintiff avers that he was then placed on a forty-eight hour liquid diet.

Plaintiff then alleges that he was once again served meals including meat products on October 11th and 12th. Plaintiff reported these incidents to the correctional officer on duty. Plaintiff avers that he refused to eat these meat meals, and that the prison refused to provide him with an alternative. On October 12, plaintiff filed a second grievance, requesting that he again be placed on his religious diet. Again, this grievance was denied by defendant Toolin, the Grievance Coordinator. Plaintiff then requested to see the doctor again. Plaintiff alleges he wrote a letter concerning his health to a Captain Conoover (a non-party to this litigation) and also filed a medical request slip.

On November 5, plaintiff alleges he met with Dr. Chang, where the plaintiff de-

scribed the symptoms he was having. Dr. Chang, plaintiff alleges, performed a limited examination. Dr. Chang then placed the plaintiff on medication again.

Plaintiff avers he then wrote a letter to the director, informing him of his stomach problems. On November 11, 1998, the plaintiff alleges the director responded, informing the plaintiff that he had only lost 3.5 pounds in weight since his arrival at Wyatt, and that such a loss was not significant in light of all of plaintiff's complaints.

On November 15, plaintiff avers that he became ill again. He reported the matter to the officer on duty. Plaintiff was then taken to health services. There he was placed on a twenty-four hour liquid diet. Plaintiff then filed another medical request on December 6, asking to see Dr. Chang. On December 11, plaintiff asserts he was again served meat meals which he would not eat. Plaintiff alleges he informed the sergeant that he was on a non-meat kosher diet. The sergeant instructed the plaintiff to file a request. In response, plaintiff filed a medical request. Afterwards, plaintiff received his request back, which stated that religious diets would not be accommodated at Wyatt. On December 12th and 13th, plaintiff avers that he was again served meat meals, and reported it.

Plaintiff was then transferred to the Hartford Correctional Institute on December 17, 1998. There he was placed on medication for his stomach problems. On December 29, 1998, plaintiff was then transferred to the Federal Detention Center in Oakdale, Louisiana. There, too, he was placed on medication for his stomach ailments.

Plaintiff has filed this federal cause of action to seek relief. Plaintiff alleges that the failure of Wyatt's employees to provide him with his religious diet amounted to a violation of the free exercise clause of the First Amendment, a violation of the prohibition against cruel and unusual punishment of the Eighth Amendment, and a violation of the equal protection clause of the Fourteenth Amendment. Plaintiff also alleges a violation of Wyatt's food service policy. Plaintiff is requesting compensatory and punitive damages, court costs, and attorney fees, along with injunctive relief. Defendants Jean Singleton, June Carlton, and Patrick Toolin have moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has opposed the motion

## II. Discussion

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which fail to state a claim upon which relief can be granted. In ruling on a motion filed under Rule 12(b)(6), the court must "accept the well pleaded factual averments of the* * * complaint as true, and construe these facts in the light most favorable to the [plaintiff]." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987). A Rule 12(b)(6) motion will only be granted when, viewed in this manner, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Under a Rule 12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992). Unverifiable conclusions, not supported by the stated facts, deserve no deference. *Id.* Thus, in ruling on the defendant's motion to dismiss, the pertinent inquiry is whether plaintiff's complaint sets forth sufficient factual allegations which, if proven, would support his claims of a deprivation of protected federal rights.

### B. Plaintiff's Claims of a Violation of the First, Eighth, and Fourteenth Amendments are not Actionable Against Private Persons.

Plaintiff, in his complaint, asserts that the defendants violated the First, Eighth,

and Fourteenth Amendments to the United States Constitution. However, plaintiff misplaces reliance upon these Constitutional provisions as a basis for the relief he seeks. The Bill of Rights of the United States Constitution limits the powers of the federal government and not private persons. Similarly, the Fourteenth Amendment limits the powers of state government and not the acts of private persons. Given these mentioned limitations, neither the Bill of Rights nor the Fourteenth Amendment provide an actionable basis to redress violations done by private persons.

### 1. Plaintiff's claims of a Constitutional deprivation under *Bivens*.

■ In order to state a claim for a *Bivens* action, plaintiff must set forth facts detailing a deprivation of a federally protected right performed by "a federal agent acting under color of federal authority." *Bivens*, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971). The Supreme Court has never addressed the question of whether or not this judicially created cause of action can be asserted against private parties. The First Circuit has, however, interpreted *Bivens* to subject only federal officers to suit, stating that "there is no cause of action against private parties acting under color of federal law or custom." *See Fletcher v. Rhode Island Hospital Trust National Bank,* 496 F.2d 927, 932, n. 8 (1st Cir.1974), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). While several other circuits, and at least one district court within the First Circuit have disagreed with such a limitation on *Bivens, Fletcher* remains binding precedent in this circuit.[6] As a result, this Court is bound to hold that *Bivens* is more restrictive than 42 U.S.C. § 1983, and applies only to federal officials acting under federal authority to deprive a person of their rights under the Constitution and laws of the United States.

■ Here, the plaintiff's claim fails under *Bivens* because the named defendants are not federal officials. Employees of the federal government are clearly proper *Bivens* defendants, as they operate as federal agents and exert federal authority. However, the named defendants in this instant case are not federal employees. Rather, they are employees of Cornell Corrections, a private corporation which was hired by the CFDFC to operate Wyatt. Cornell Corrections is not affiliated in any way with the federal government.[7] Defendants Jean Singleton, June Carlton, and Patrick Toolin are private parties working for a private corporation. Accordingly, no cause of action exists against these private defendants under *Bivens. See Fletcher,* 496 F.2d 927, 932, n. 8 (1st Cir.1974). The defendants' motion to dismiss the plaintiff's *Bivens* claims should be granted.

### 2. Plaintiff's claims of a Constitutional deprivation under 42 U.S.C. § 1983.

■ To state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that his federally protected rights have been violated by a person acting under color of

---

**6.** *See Heinrich v. Sweet* 62 F.Supp.2d 282, 306 (D.Mass.1999), noting that four different Circuit Courts of Appeal have held contrary to *Fletcher* that a *Bivens* action may be asserted against a private party acting under color of federal law, and holding that *Bivens* does extend to such actions. In support of *Fletcher*'s conclusion, *see also Stevens v. Morrison–Knudsen Saudi Arabia Consortium,* 576 F.Supp. 516 (D.Md.1983), *aff'd,* 755 F.2d 375 (4th Cir.1985), discussing the more restrictive nature of who may be properly sued under *Bivens* as compared to 42 U.S.C. § 1983.

**7.** *See Lebron v. National Railroad Passenger Corp.,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (holding that Amtrak was a part of the federal government for the purposes of a First Amendment claim because the Federal government created it by enactment of special legislation to further governmental objectives, and had retained permanent control over the corporation's activities). Here, the plaintiff has averred in his memorandum that Wyatt "was created by a special Federal Statute". However, this position is not supported, as discussed in Section I, A, *supra.*

state law. The statute provides, in pertinent part:

> Every person who, under color of any statute...of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.... *See Rodriguez–Garcia v. Davila*, 904 F.2d 90, 95 (1st Cir.1990) (citing 42 U.S.C. § 1983).

In determining whether the plaintiff states a claim under § 1983, the critical question is whether the Constitutional deprivations he alleges at the hands of the named defendants can be fairly considered state action for the purposes of the statute. It is well settled that neither the Amendments to the Constitution nor § 1983 reach purely private actions. *See Rodriguez–Garcia*, 904 F.2d 90, 95 (1st Cir.1990). As a result, the validity of plaintiff's claim hinges on a demonstration of state action, whether direct or indirect. *See id. (citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482).

### a. Direct State Action

■ Although defendants are employed by Cornell Corrections, a private corporation, the court must evaluate whether Cornell Corrections is directly linked to the state government, making it an "arm of the state" consistent with the Supreme Court's opinion in *Lebron v. National Railroad Passenger Corp. See* n. 8, *supra.* In *Lebron*, the Court held that Amtrak could be considered a part of the federal government because the corporation had been created by the government to serve the government's objectives, and had since been controlled by the government through its permanent right to appoint a majority of Amtrak's board of directors. *See id.*, at 397–401, 115 S.Ct. 961.

In this instant case, the CFDFC was created by the city of Central Falls pursuant to the Rhode Island Municipal Detention Facility Corporations Act. While Central Falls does have the right to exert limited authority over the CFDFC (see n. 5), the municipality does not maintain the same level of control that the federal government was found to exert over Amtrak in *Lebron*. However, the named defendants in this case are not even employed by the CFDFC. Rather, they are employees of Cornell Corrections, a private corporation hired by the CFDFC to manage the day-to-day operations of the Wyatt Detention Center. While connecting the CFDFC to the state government under the rationale used in *Lebron* is possible, there is no connection between Cornell Corrections and the state, nor a connection between the state and the employees of Cornell. As a result, the named defendants are not directly linked to the state government and their actions are not directly attributable to the state.

### b. Indirect State Action

Although private entities are not directly linked to the government, their actions can sometimes be regarded as governmental action for constitutional purposes. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). To evaluate whether or not the acts of an individual constitute state action for the purposes of § 1983, the Supreme Court has developed three tests: the nexus test, which focuses on the government's involvement in the activity of the private party; the symbiotic relationship test, which looks to the mutual interdependence of the private party with the government; and the traditional public function test, which holds constitutionally accountable private entities performing a function that has traditionally been the exclusive domain of the government.[8] These tests are

---

8. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (nexus test); *Burton v. Wilmington Parking Authority*,

365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (symbiotic relationship test); and *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102

aimed at determining the degree of state involvement in the actions of the defendants, and consequently whether or not they are proper defendants under § 1983.

### i. The Nexus Test

■■■ In order for the plaintiff to establish that the acts of the defendants are fairly attributable to the state under the 'nexus test', the plaintiff must demonstrate a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In addition, the Supreme Court has further narrowed the type of connection which will suffice to establish a nexus, holding that "a state normally can be responsible for a private decision only when it has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982).

■■■ Here, plaintiff avers that the named defendants, employees of Cornell Corrections, refused to provide him with a diet consistent with his religious beliefs. To establish liability under the 'nexus test', this refusal must be done under the overt or covert direction of the state or the product of state involvement. " 'The challenged action of the regulated entity…may be fairly treated as that of the State itself…only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.' " *Rodriguez–Garcia v. Davila,* 904 F.2d 90, 97 (1st Cir.1990) (*quoting Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785). Here, the state is not responsible for the conduct of the defendants, private employees of Cornell Corrections, in allegedly failing to pro-

vide the plaintiff with his religious diet. There is no connection between the state and the conduct of which the plaintiff complains. Accordingly, no 'nexus' exits connecting Cornell Corrections or its employees, here defendants Toolin, Singleton, and Carlton, to the state.

### ii. The Symbiotic Relationship Test

■■■ State action exists under the symbiotic relationship test if the acts of a private party are attributable to the state because the government " 'has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity….' " *Rodriguez–Garcia* at 98 (*quoting Burton v. Wilmington Parking Authority,* 365 U.S. at 725, 81 S.Ct. at 862). While this test has often focused on whether or not the state shares in any profits made through its involvement with the private entity, it also should focus on the "interdependence and joint participation" of the state and the private entity. *See Rodriguez–Garcia* at 98. In determining whether such interdependence exists, the court should take into account whether the private entity performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and whether or not any judgment entered against the entity will be satisfied out of the state treasury. *See id.* at 99.

■■■ Here, Cornell Corrections does not own the Wyatt Center. It is a private corporation managing the daily functions of a prison. As the Supreme Court discussed in *Richardson v. McKnight,* the management of prisons has never been an exclusive public function. *See* 521 U.S. 399, 405, 117 S.Ct. 2100, 2104, 138 L.Ed.2d 540 (1997) (holding that privately employed prison guards were not entitled to

S.Ct. 2764, 73 L.Ed.2d 418 (1982) (traditional public function test); *See also Rodriguez–Gar-*

*cia v. Davila,* 904 F.2d 90, 96 (1st Cir.1990).

qualified immunity from § 1983 liability). Cornell Corrections operates with complete autonomy as the day-to-day manager of Wyatt. Cornell is not financed by the state, nor will any judgment rendered against employees of Cornell, a private corporation, be paid out of the state treasury. Accordingly, no symbiotic relationship exists between Cornell Corrections or its employees and the state of Rhode Island.

### iii. The Traditional Public Function Test

In determining whether or not a private entity is a state actor for the purposes of § 1983, the courts have also considered whether or not "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky, supra* at 1005, 102 S.Ct. at 2786 (1982) (*quoting Jackson v. Metropolitan Edison Co., supra* at 353, 95 S.Ct. at 454). For the actions of the private entity to be fairly attributed to the state, the relevant inquiry is "not simply whether a private group is serving a public function," but "whether the function performed as been 'traditionally the exclusive prerogative of the State.'" *See Rodriguez–Garcia* at 98 (*quoting Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418).

As mentioned above, the Supreme Court expressly stated that "correctional facilities have never been exclusively public." *Richardson v. McKnight,* 521 U.S. at 405, 117 S.Ct. at 2104. In *Richardson,* the court discussed at length the heavy involvement of private contractors in prison management throughout our nation's history, dating back to the 18th century. *Id* at 405–406, 117 S.Ct. 2100. As a result, the management of prisons cannot be fairly construed as a function that has traditionally been "an exclusive prerogative of the sovereign." *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 160, 98 S.Ct. 1729, 1735, 56 L.Ed.2d 185 (1978). "While many functions have been traditionally per-

formed by governments, very few have been 'exclusively reserved to the State.'" *Id,* 436 U.S. at 158, 98 S.Ct. at 1734.

In *Skelton v. Pri–Cor, Inc.,* 963 F.2d 100 (6th Cir.1991), the Sixth Circuit has held that when a private corporation administers a state correctional facility pursuant to a contract with the state, it is a state actor for purposes of 1983. The plaintiff in *Skelton* had alleged he was deprived of a Bible and access to the law library. *See id.* at 101. The private company that operated the prison argued that since its facility is privately operated and its workers are privately employed, there is no state action as required to sustain a § 1983 action. The Court rejected Pri Cor's attempt to avoid 1983 liability, since it was performing a function delegated by the state.

Wyatt can be easily distinguished. Here, there is no element of delegation. The State has not delegated to Cornell Corrections, or its employees a function performed on behalf of the government. Rather, the state, pursuant to the Act, has allowed the creation of a corporation, the CFDFC. The CFDFC in turn built the prison, for *economic* needs. The Wyatt center was constructed not as a delegation of the state's responsibility to house its inmates, but rather, as a money making venture. The CFDFC then contracted with Cornell to operate the facility. Again, there is no delegation from the state to Cornell or the CFDFC to assume responsibility for housing of state inmates. Wyatt only houses federal pre trial detainees.

Here, a private, non governmental corporation, Cornell Corrections, and its employees operate the Wyatt Detention Center. As the Supreme Court discussed in *Richardson,* operating a prison has never been the "exclusive prerogative of the state". Since operating a prison a prison has never been the exclusive prerogative of the state, since Wyatt is run by a private, non governmental corporation and its employees, and since there is no delegation

by the state to house its inmates, I find that the named defendants are not 'state actors' under the public function doctrine.

In *Richardson,* the Court reserved the question of whether private prison guards are state actors for purposes of § 1983. *Richardson* dealt only with the question of whether prison guards employed by a private firm were entitled to the same qualified immunity defense as guards employed by the state. *See Richardson,* 521 U.S. at 413, 117 S.Ct. at 2108. The Supreme Court held that they were not. In so doing, the Supreme Court in *Richardson* impliedly rejected the premise that private guards are subject to § 1983 liability by not treating private prison guards like their state employed counterparts. Thus, this court finds that the named defendants are not proper defendants under 42 U.S.C. § 1983.

Accordingly, I conclude that defendants Singleton, Carlton, and Toolin cannot be considered state actors for § 1983 purposes, as neither they, nor their employer, Cornell Corrections, are directly or indirectly linked to the state. The defendants' motion to dismiss the plaintiff's claims under 42 U.S.C. § 1983 should be granted.

### C. Plaintiff's claim of a Violation of Wyatt Food Service Policy 451.13

Plaintiff in his Complaint also attempts to base a claim on Wyatt Regulation 451.13. Defendants have moved to dismiss this claim, pursuant to Fed.R.Civ.P. 12(b)(6).

Regulation 451.13 provides, in pertinent part:

> Inmates requesting special diets because of their religious beliefs and/or require adherence to the religious dietary laws must submit a written request to the Program Administrator. The Program Administrator will confer with the appropriate Chaplain regarding placement on a religious diet. The Chaplain will submit a written approval to the Food Services Director outlining specific di-

etary restrictions. Diets will be kept as simple as possible and conform as closely as possible to the food served other inmates.

Plaintiff's claim based on this regulation is misplaced. This Court has previously held that no private cause of action is available to inmates for violations of prison regulations. *See Joost v. Cornell Corrections, Inc.,* C.A. No. 97–512T, 1998 WL 939531, Report and Recommendation of 12/11/98 at 13, accepted by Order of 3/29/99; *See also, e.g., Harper v. Williford,* 96 F.3d 1526 (D.C.Cir.1996), *Chinchello v. Fenton,* 805 F.2d 126 (3rd Cir.1986). Here, Lawson attempts to base a claim on one of Wyatt's in house regulations. Since this Court has previously held that such claims are not actionable, I recommend that the defendants' motion to dismiss this claim be granted.

### III. Conclusion

Accordingly, for the reasons stated above, I recommend that defendants Singleton, Carlton, and Toolin's motion to dismiss for a failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should be **GRANTED.** Any objection to this report and recommendation must be specific and must be filed with the clerk of the court within ten days of receipt. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Company,* 616 F.2d 603 (1st Cir.1980).